**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROGER JEAN LEBLANC,** individually and on behalf of all others similarly situated | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-201-SDD-RLB** <br> **C/W 14-218-SDD-RLB** |
| **EXXON MOBIL CORPORATION, ET AL.** | This Order pertains to all cases. |

**ORDER**

Before the Court is Plaintiffs' Motion to Compel filed on October 8, 2014. (R. Doc. 40). Plaintiffs' Motion seeks to compel discovery purportedly limited to class certification issues. The Motion is Opposed. (R. Doc. 45). Defendants have also filed a Supplemental Response. (R. Doc. 87).

**I.   BACKGROUND**

Plaintiffs Roger Jean LeBlanc and James Smith filed class action complaints "on behalf of thousands of purchasers of defective fuel manufactured at Exxon Mobil's Baton Rouge Refinery facility and distributed to retail outlets in Louisiana between April 1, 2013 and April 1, 2014, and owners and lessees of property damaged by the use of that defective fuel." (*See*, *e.g*., R. Doc. 1 at 1). Plaintiffs alleged that the fuel released during this period damaged or reduced the performance of vehicle engines when used.

Defendants state that they "determined that a pump malfunction on March 7, 2014 sent unusually high levels of polymer (resin) into the gasoline pool, increasing the fuel's UWG [unwashed gum] levels." (R. Doc. 25 at 8). Defendants state that their "investigation revealed that the released fuel had a UWG content between 27 and 50 mg/hml." (R. Doc. 25 at 8). Defendants state that although "there are no industry standards nor government regulations

dictating acceptable UWG levels in gas" the Defendants "had internal allowances of up to [100 mg/hml]" of UWG at the time the gasoline at issue was released. (R. Doc. 25 at 7). Defendants further provide that after becoming aware of the release, they shut down the Baton Rouge Terminal, reduced the UWG release limit to 10 mg/hml, issued press releases, and implemented a claims handling program to address consumer complaints. (R. Doc. 25 at 8).

Plaintiffs moved to certify their purported class on June 26, 2014. (R. Doc. 19). On July 7, 2014, Plaintiffs propounded fifteen interrogatories and fifteen requests for production on Defendants. (R. Doc. 40-2). Defendants filed an opposition to Plaintiffs' motion to certify on August 21, 2014. (R. Doc. 25).[1] Defendants argue that Plaintiffs have failed to meet all of the Rule 23 class certification requirements, including numerosity, commonality, typicality, adequacy, predominance, and superiority. (R. Doc. 25 at 11-40). Defendants further argue that Plaintiffs have not demonstrated that the alleged class is ascertainable. (R. Doc. 25 at 41-43).

On August 28, 2014, the Court held a scheduling conference with the parties and provided that "that the scope of discovery prior to the court's ruling on certification shall be limited to class certification issues and shall not go to the merits of the actions." (R. Doc. 29 at 2). On September 12, 2014, Defendants provided their responses and objections to the discovery propounded by Plaintiffs on July 7, 2014. (R. Doc. 40-3). Defendants generally objected to Plaintiffs' discovery requests "as premature, overbroad, and unduly burdensome to the extent they seek information or documents not reasonably calculated to the discovery of information relevant to Plaintiffs' Motion for Class Certification." (R. Doc. 40-3 at 3). Defendants have also raised specific objections regarding the discovery, including the objection that some of the

---

[1] In addition to opposing class certification, Defendants filed a Motion to Strike Class Allegations (R. Doc. 43). On December 3, 2014, the district judge denied this motion on the basis that it goes to the merits of the pending Motion for Class Certification, and granted leave to the Defendants to reassert the motion after the class certification hearing set for February 12, 2014. (R. Doc. 85).

2

discovery requests seek "information protected by the attorney client privilege, attorney work-product doctrine, or seeks the identification of consulting, non-testifying experts." (*See*, *e.g.*, R. Doc. 40-3 at 4).

On October 8, 2014, Plaintiffs filed their instant Motion to Compel. (R. Doc. 40). Plaintiffs seek additional responses to Interrogatory Nos. 1, 2, 3, 4, 5, 7, 8, 9, 10, and 13 and Request for Production Nos. 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, and 15. Plaintiffs primarily argue that Defendants' objections based on relevance are improper because the discovery requests seek information relevant to pre-certification issues. In their broad overview of the issues raised by the Motion to Compel, Plaintiffs argue that they are entitled to discover information regarding any dilution of the problematic gasoline,[2] other factors that may have impacted the level of damage caused by the gasoline, and the Defendants' claims handling process. Plaintiffs claim that these topics are relevant because Defendants have raised these issues respectively to argue that the numerosity, commonality, and superiority prongs of class certification are not satisfied. In addition, Plaintiffs also argue that to the extent Defendants have withheld responsive documents on the basis of privilege they must provide privilege logs.

On October 29, 2014, Defendants opposed the Plaintiffs' Motion to Compel, primarily arguing that Plaintiffs' discovery requests broadly seek information that does not pertain to class certification at all. (R. Doc. 45). Defendants argue that Plaintiffs' motion "attempts a bait and switch" by characterizing overly broad and unreasonable discovery requests to appear "more reasonable and more narrowly tailored." (R. Doc. 45 at 6).

On November 12, 2014, Defendants produced over 40,000 pages of documents in a supplemental production. (R. Doc. 87 at 2). According to Defendants, this "was a significant

---

[2] Plaintiff describes the gasoline at issue as "defective" and Defendants describe the gasoline at issue as "atypical."

3

production of documents related to class issues such as internal Exxon communications regarding claims related to the atypical gasoline at issue in this action, correspondence with Crawford and Company related to the claims handling process, and instructions or protocols for handling of claims related to the atypical gasoline." (R. Doc. 87 at 2).

On November 18, 2014, Defendants served additional supplemental responses to Plaintiffs' discovery requests. (R. Doc. 87-1). These supplemental responses narrowed certain objections and identified additional responsive information regarding Interrogatory Nos. 2, 7, 8 and Request for Production Nos. 4, 7, 9, and 15. (R. Doc. 87 at 2-3). Based on these supplemental productions and responses, Defendants reassert their opposition to Plaintiffs' Motion to Compel. (R. Doc. 87 at 3-4).

## II. LAW AND ANALYSIS

### A. Legal Standards

Rule 26(b)(1) of the Federal Rule of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." To be relevant, "information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). District courts have "wide discretion in determining the scope and effect of discovery." *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 724 (5th Cir. 1990). In this action, the Court has limited discovery prior to the class certification hearing to class certification issues. (R. Doc. 29 at 2).

A party seeking discovery may move for an order compelling production of requested documents if a party fails to provide answers or responses. Fed. R. Civ. P. 37(a)(3)(B). If the motion to compel is denied, the court may issue any protective order authorized under Rule 26(c). Fed. R. Civ. P. 37(a)(5)(B).

4

### B. The Contested Discovery Requests

The primary issue before the Court is whether and to what extent Plaintiffs have sought information relevant to class certification that Defendants have refused to provide. The Court has reviewed the pre-certification discovery propounded by Plaintiffs, the Defendants' responses and objections, the Defendants' supplemental responses, and the briefing submitted by the parties. Based on that review, the Court will address the individual discovery requests as grouped in the Plaintiffs' motion.

#### 1. Plaintiffs' Interrogatory No. 1

Plaintiffs state in their motion that Interrogatory No. 1 seeks "basic identification information for the Exxon employees involved in the production of the bad gas at issue – *e.g.*, an organizational chart." (R. Doc. 40-1 at 5). Plaintiffs argue that in response to this interrogatory, Defendants should have produced an organization chart and identified Defendants' employees actually involved in the production of the problematic gasoline. Interrogatory No. 1 states the following:

> **Interrogatory No. 1.** Please list names, department and position of all employees and/or subcontractors with knowledge of relevant facts regarding the gasoline produced during the Event."[3]

Defendants objected to the interrogatory as "vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence." (R. Doc. 40-3 at 4). Despite these objections, Defendants identified certain individuals as responsive to the interrogatory.

---

[3] Plaintiffs define the "Event" as "Exxon's manufacture, distribution, and sale of gasoline manufactured at Exxon Mobil's Baton Rouge Refinery facility and distributed to retail outlets in Louisiana between March 1, 2014 and April 1, 2014, which Exxon has identified as having an 'atypical variation in certain batches of fuel that was consistent with issues observed in impacted vehicles.'" (R. Doc. 40-2 at 4).

Interrogatory No. 1 does not ask for an organization chart. Interrogatory No. 1 is overly broad because it seeks information from "all employees and/or subcontractors" of the Defendants with any knowledge of any relevant facts regarding gasoline "produced during the Event." As explained by Defendants, providing a complete response to this interrogatory would require Defendants to interview thousands of individuals who may or may not have read about the incident. Without waiving their objections, Defendants identified four employees that could be contracted through defense counsel: (1) John Dill, Claims Supervisor, ExxonMobil Risk Management, Inc.; (2) Alan Rapee, ExxonMobil Risk Management, Inc.; (3) Gerard Forde, Baton Rouge Refinery Technical Manager, ExxonMobil Refining and Supply; and (4) Mike Noorman, Fuel Products Technology Program Leader, ExxonMobil Products Research & Design. (R. Doc. 40-3 at 2). In addition, Defendants provided that "[o]ne or more Crawford and Company representative(s) with knowledge of the claims process established by ExxonMobil in response to claims regarding the gasoline that is at issue in this lawsuit." (R. Doc. 40-3 at 2). In light of Plaintiff's broad interrogatory, it appears that Defendants made reasonable efforts to identify key persons with relevant information. Defendants need not provide an additional response to Interrogatory No. 1.

**IT IS ORDERED** that Plaintiffs' Motion to Compel is **DENIED** as to Interrogatory No. 1.

2. **Plaintiffs' Interrogatory No. 2**

Plaintiffs state in their motion that Interrogatory No. 2 seeks "the identification of all outside consultants Exxon used to investigate the defective fuel." (R. Doc. 40-1 at 5). Interrogatory No. 2 states the following:

> **Interrogatory No. 2.** Please list the names, employers, job description, and terms of engagement for all independent contractors, consultants or other third parties

> hired by Exxon after it determined there could be a variance in the Event gasoline, whom provided services regarding the gasoline manufactured by the Event. This should include, but not be limited to, outside quality control professionals, public relations firms, adjustment and claims handling firms, remediation professionals, and testing professionals.

In response to this interrogatory, Defendants identified Crawford and Company's representatives, and listed the names and addresses of "mechanics and rental agencies with which Exxon contracted to address consumer complaints." (R. Doc. 45 at 8; R. Doc. 40-3 at 5-11). Plaintiffs acknowledge that Defendants have listed every service station and rental company the Defendants paid to repair damaged engines. (R. Doc. 40-1 at 5). Plaintiffs argue, however, that this interrogatory actually requested a list of "anyone who worked on investigating the fuel itself." (R. Doc. 40-1 at 5). Furthermore, Plaintiffs argue that Defendants have not provided any privilege logs regarding responsive documents withheld on the basis of privilege or other bases. (R. Doc. 40-1 at 5).

In their supplemental response, Defendants removed their objection to the scope of discovery sought through this interrogatory and identified Intertek Group, PLC as an entity that conducted testing of the problematic gasoline. (R. Doc. 87-1 at 1). It is not clear, however, whether Defendants have withheld otherwise responsive information on some basis other than relevance, such as privilege. To the extent Defendants have withheld responses on the basis of privilege or some other permissible basis, Defendants shall provide Plaintiffs with a supplemental response providing the basis for not responding and shall provide a privilege log if appropriate.[4]

**IT IS ORDERED** that Plaintiffs' Motion to Compel is **GRANTED IN PART AND DENIED IN PART** as to Interrogatory No. 2.

---

[4] To the extent Defendants have withheld any responsive information and documents based on a privilege or immunity, the Defendants must produce a detailed privilege log detailing their objections based on privileges or immunities.

7

### 3. Plaintiffs' Interrogatory No. 3 and Request for Production No. 15

Plaintiff states that these discovery requests seek "an explanation of, and support for, the production of the defective gas and the identification of the defect [, including] the amount of gas produced, the manufacturing steps employed, where the fuel went, and when and how Exxon became aware of the defect." (R. Doc. 40-1 at 6). Interrogatory No. 3 and Request for Production No. 15 state the following:

> **Interrogatory No. 3.** Please detail the events regarding the production, distribution, and sales of the gasoline from the Event, including, but not limited to:
> a. the acquisition of raw materials;
> b. processing, including additives used, and manufacturing steps;
> c. quality control analysis;
> d. distribution;
> e. the number of gallons or barrels produced;
> f. the number of gallons or barrels distributed;
> g. the number of gallons or barrels sold to retail customers; and
> h. the date Exxon first became aware of a possible variation in the gasoline.
>
> **Request for Production No. 15.** Please produce any and all documents that support your admission that Exxon identified an atypical variation in certain batches of fuel that was consistent with issues observed in impacted vehicles.

Defendants objected to these discovery requests, in part, on the basis that the information and documents sought were not relevant to class certification. (R. Doc. 40-3 at 11, 21). In response to Interrogatory No. 3, Defendants provided information regarding their discovery of the problematic gasoline and their findings regarding the elevated UGW levels. (R. Doc. 40-3 at 12). Defendants also stated that they believe "that approximately 120,000 barrels of affected gasoline were released from the Baton Rouge Terminal to distributors." (R. Doc. 40-3 at 12). Defendants refused to provide "information relating to acquisition of raw materials, events regarding production, quality control analysis, and the quantity of fuel production (as opposed to distributed)" as that information would not be relevant to class certification. (R. Doc. 40-3 at 11-

8

12). Defendants did not initially produce any documents in response to Request for Production No. 15.

Plaintiffs argue that the foregoing discovery requests seek relevant information in light of Defendants' arguments regarding fuel dilution in opposition to class certification. (R. Doc. 40-1 at 6-7). In the context of opposing class certification, Defendants have argued that fuel dilution is a ground for denying class certification because it has direct bearing on the elements of numerosity, commonality, predominance, and ascertainability. (*See* R. Doc. 25 at 7, 14-15, 20, 26, 42).

The Court agrees with Plaintiffs that they are entitled to discovery regarding dilution of the problematic gasoline. While in general Defendants' fuel manufacturing process has no direct bearing on whether and to what extent the problematic fuel may have been diluted with "typical" fuel, it does have direct bearing on the degree and extent to which fuel is to be deemed "atypical" in the first place. Defendants have defined the problematic gasoline by its UWG content. Defendants have acknowledged, however, that there are no national or industry standards for UWG content in gasoline and that the UWG levels in the problematic gasoline met Defendants' own internal standards. Plaintiffs are entitled to discovery into the characteristics that Defendants claim make the gasoline "atypical." Without such discovery, Plaintiffs are left to take Defendants' word regarding the problematic qualities of the "atypical" gasoline and how those qualities can be extinguished through dilution.

That said, the Court will not require any additional response to Interrogatory No. 3, which, as stated, is overly broad. Plaintiff basically requests Defendants to provide a detailed storyline of how the Defendants acquire raw materials and produce and distribute gasoline and how retailers then sell the gasoline. An interrogatory requesting the distribution of the entire

gasoline production, distribution, and sales process is facially overly broad.  Defendants made a good faith effort to provide responsive information relevant to class certification issues and responsive to some of the illustrative categories provided by Plaintiffs.  Defendants need not provide an additional response to Interrogatory No. 3.

After Plaintiffs filed the instant motion, Defendants provided a supplemental response to Request for Production No. 15 that retracts the objection of irrelevance. (R. Doc. 87-1 at 10). Defendants state in their supplemental response that they are producing documents responsive to the discovery request.  To the extent Defendants there are documents relevant to the issue of dilution that were not produced, those documents are responsive to Request for Production No. 15 and shall be produced.

**IT IS ORDERED** that Plaintiffs' Motion to Compel is **DENIED** as to Interrogatory No. 3.

**IT IS ORDERED** that Plaintiffs' Motion to Compel is **GRANTED IN PART AND DENIED IN PART** as to Request for Production No. 15

### 4. Plaintiffs' Interrogatory Nos. 4 and 5, and Request for Production Nos. 6 and 14

Plaintiffs characterize these discovery requests as seeking "the identity of (and related documents of) the wholesale and retail buyers that obtained gas from Exxon's Baton Rouge facility." (R. Doc. 40-1 at 7).  Plaintiffs argue that Defendants did not fully respond to these discovery requests by identifying purchasers of the problematic gasoline.  Furthermore, Plaintiffs argue that Defendants' offer to allow Plaintiffs to review the relevant claims files is insufficient.[5]

---

[5] Defendants represent that they have subsequently produced the entire claims file in both hard and electronic format.  (R. Doc. 87 at 3).

The discovery requests state the following:

**Interrogatory No. 4.** Please list the owner and physical locations of the retail location that received gasoline produced during the Event.

**Interrogatory No. 5.** Please list the recipients from the "rack" at the Baton Rouge refinery of the gasoline produced during the Event, and volume of gasoline each received.

**Request for Production No. 6.** Please produce all communications, including financial transaction data, to or from buyers and recipients of all Exxon gasoline regarding the Event.

**Request for Production No. 14**. Please produce all delivery receipts from the rack at the Baton Rouge refinery from March 1, 2014 to April, 2014.

In response to Interrogatory No. 4, Defendants responded that they do not have the information sought as "Exxon did not sell or distribute atypical gasoline to retail locations in the Baton Rouge area and thus cannot comprehensively identify the owner and physical address of the retail locations that received the subject gasoline." (R. Doc. 40-3 at 12). Because some claimants identified the retail locations where they allegedly purchased the problematic gasoline, Defendants offered Plaintiffs the opportunity to inspect the claims files. (R. Doc. 40-3 at 12). The Court finds this response sufficient. Defendants need not provide an additional response to Interrogatory No. 4.

In response to Interrogatory No. 5, Defendants have agreed to identify, upon entry of an appropriate protective order, distributors that "received potentially affected gasoline from the Baton Rouge Terminal, in the indicated gross volumes, from March 13, 2014 through March 25, 2014." (R. Doc. 40-3 at 13). An "Amended Stipulated Protective and Confidentiality Agreement" was entered in this case on September 25, 2014. (R. Doc. 37). Accordingly, Defendants must produce their list of Baton Rouge refineries if such a list has not yet been produced.

In response to Request for Production No. 6, Exxon has agreed to produce "non-objectionable, responsive documents for inspection by Plaintiffs." (R. Doc. 40-3 at 18). It is unclear from the record whether Plaintiffs have inspected these documents. Plaintiffs did not indicate in their motion why the documents offered for inspection were deficient or insufficient. (*See* R. Doc. 40-1 at 7-8). To the extent there are documents reflecting communications or financial transaction data that would identify the wholesale and retail buyers of the gasoline at issue that have not yet been produced, Defendants shall produce those documents.

In response to Request for Production No. 14, Exxon objected that the request is vague because the term "delivery receipts" is undefined. (R. Doc. 40-3 at 21). Nevertheless, Defendants agreed to "produce responsive documents for inspection." (R. Doc. 40-3 at 21). In their supplemental production, Defendants produced "the entire claims file for Crawford and Company related to the atypical gasoline" in both hard and electronic format. (R. Doc. 87-1 at 3). Defendants also produced "additional correspondence" between Defendants and Crawford in their supplemental production. (R. Doc. 87-1 at 3). To the extent that there are any other documents reflecting the receipt of gasoline from the rack by persons or entities (such as those in response to Interrogatory No. 5), those documents are responsive to Request for Production No. 14 and shall be produced.

**IT IS ORDERED** that Plaintiffs' Motion to Compel is **DENIED** as to Interrogatory No. 4.

**IT IS ORDERED** that Plaintiffs' Motion to Compel is **GRANTED** as to Interrogatory No. 5.

**IT IS ORDERED** that Plaintiffs' Motion to Compel is **GRANTED IN PART AND DENIED IN PART** as to Request for Production Nos. 6 and 14.

### 5. Plaintiffs' Interrogatory Nos. 7, 8, 9, 10, and 13, and Request for Production Nos. 3, 4, 5, 11, and 12

Plaintiff describes these discovery requests as all seeking "information supporting Exxon's repeated assertion that it found an 'atypical variation in certain batches of fuel'[, including] all reports and investigative material used to form the conclusion of 'atypical' fuel, along with the regulatory filings cited in the many press releases Exxon uses to support its opposition to class [certification]." (R. Doc. 40-1 at 8). The interrogatories and requests for production in dispute state the following:

> **Interrogatory No. 7**. Please provide a true and complete copy of all testing, reports, and/or analysis, whether performed by you, your representatives or any third party, demonstrating an "atypical variation in certain batches of fuel."
>
> **Interrogatory No. 8**. Please detail all analytic data compiled regarding the gasoline from the Event, including descriptions of the methodology used for testing, location of samples, origin, and results.
>
> **Interrogatory No. 9.** Please describe with specificity and detail the "atypical variation in certain batches of fuel that was consistent with issues observed in impacted vehicles," including in your response what constitutes "atypical variation" and what "issues" were "observed in impacted vehicles."
>
> **Interrogatory No. 10.** Please detail all corrective measures instituted at the Baton Rouge refinery after the Event at Exxon.
>
> **Interrogatory No. 13.** Please provide the name, position, and current address of the person or persons who determined that the gasoline in question was subject to an "atypical variation in certain batches of fuel that was consistent with issues observed in impacted vehicles."
>
> **Request for Production No. 3.** Please produce all reports, memos, emails, notices, or other documents regarding quality control at the Baton Rouge refinery from April 1, 2013 forward.
>
> **Request for Production No. 4.** Please produce all communications between Exxon employees regarding the Event.
>
> **Request for Production No. 5.** Please produce all communications between Exxon and all state and federal agencies regarding the Event.

**Request for Production No. 11.** Please produce all outside consulting reports for 2013 and 2014 dealing with quality control or product specifications at the Baton Rouge refinery.

**Request for Production No. 12.** Please produce all documents regarding corrective measures taken after the Event at the Baton Rouge refinery, retail locations, and every other place Exxon took corrective measures.

Plaintiff claims that the information sought in these discovery requests is necessary to address the issue of "dilution" raised by Defendants to contradict Plaintiffs' numerosity and commonality arguments. (R. Doc. 40-1 at 8). In contrast, Defendants argue that the discovery requests "seek essentially all-encompassing merits discovery regarding all events leading up to and following the atypical gas event." (R. Doc. 45 at 11). As discussed above, the Court finds that discovery into the issue of "dilution" is relevant to class certification.

Interrogatory Nos. 7 and 8 seek information relevant to the issue of dilution and Defendants' understanding of what made the gasoline at issue "atypical." The information sought includes test results and reports regarding the qualities of gasoline produced and released during the Event. Defendants objected to Interrogatory Nos. 7 and 8, among other grounds, on the basis that they sought information not relevant to class certification. (R. Doc. 40-3 at 13). Defendants also objected to Interrogatory No. 7 on the basis that "it impermissibly seeks the production of documents in response to an Interrogatory." (R. Doc. 40-3 at 13). In their initial response to the interrogatories, Defendants did not provide any information (whether in the form of documents or otherwise) regarding the test results and reports sought.

Defendants properly objected to Interrogatory No. 7 on the basis that it is really a request for production. *See Lee v. Elec. Products Co.*, 37 F.R.D. 42, 45 (N.D. Ohio 1963). While a responding party may have the option to produce documents in lieu of an answer to an interrogatory, interrogatories are not the proper discovery device for obtaining the production of

14

documents. Therefore, no production of documents will be compelled with respect to Interrogatory No. 7.

In their supplemental response, however, Defendants agreed to produce "analytical and testing documents" responsive to both Interrogatory Nos. 7 and 8. (R. Doc. 87-1 at 8). Defendants also referenced the deposition of Mike Noorman as providing information responsive to Interrogatory No. 8. (R. Doc. 87-1 at 8). To the extent there is analytic data and/or methodology responsive to Interrogatory No. 8 that has not been identified as responsive to that Interrogatory, Defendants must either provide the responsive information or may provide documents as permitted by Fed. R. Civ. P. 33(d).

Interrogatory Nos. 9 and 13 seek information relevant to the issue of dilution and for determining how to define the scope of gasoline that is indeed problematic. Defendants' responses to these interrogatories appear to be sufficient. In response to Interrogatory No. 9, Defendants provided a reasonably detailed description of the "atypical variation" and its impact on vehicles. (R. Doc. 40-3 at 14-15). In response to Interrogatory No. 13, Defendants identified two individuals also identified in response to Interrogatory No. 1: Gerard Forde and Mike Noorman. (R. Doc. 40-3 at 15-16). Plaintiffs have not specifically identified why these responses are insufficient. (*See* R. Doc. 40-1 at 8-11). To the extent there is additional information sought in Interrogatory Nos. 9 and 13 that have not been provided to Plaintiffs, including any additional individuals responsive to Interrogatory No. 13, Defendants must provide the responsive information.

Interrogatory No. 10 and Request for Production Nos. 3, 11, 12 seek information and documents regarding post-event corrective measures. Such information has no bearing on class certification in general, or, more specifically, the issue of dilution or the determination of the

scope of problematic gasoline produced, distributed, and sold.[6] Defendants need not provide an additional response to Interrogatory No. 10 and Request for Production Nos. 3, 11, 12.

Request for Production No. 4 seeks correspondence between Defendants' employees "regarding the Event." Although this request for production is broad, Defendants initially produced "correspondence between John Dill and other Exxon employees related to the Exxon claims handling process." (R. Doc. 40-3 at 17). In their supplemental production, Defendants produced additional communications amongst Defendants' employees regarding the Event. (R. Doc. 87 at 2-3). Defendants need not provide an additional response to Request for Production No. 4.

Request for Production No. 5 seeks post-event correspondence between Defendants and state and federal agencies. As with Plaintiffs' discovery requests seeking information and documents regarding post-event corrective measures, this request has no bearing on class certification in general, or, more specifically, the issue of dilution or the determination of the scope of problematic gasoline produced, distributed, and sold.[7] Defendants need not provide an additional response to Request for Production No. 5.

**IT IS ORDERED** that Plaintiffs' Motion to Compel is **GRANTED IN PART AND DENIED IN PART** as to Interrogatory Nos. 8, 9, and 13.

**IT IS ORDERED** that Plaintiffs' Motion to Compel is **DENIED** as to Interrogatory No. 10, and Request for Production Nos. 3, 4, 5, 7, 11, and 12.

---

[6] To the extent any such post-event corrective measures included the testing and results of the "atypical" fuel, or would otherwise be responsive to any additional discovery requests consistent with this Order, then production of such information may be required on that basis.

[7] For the same reasons set forth in footnote 6, this correspondence may be responsive to other discovery requests based on the nature and/or content of that correspondence.

### 6. Plaintiffs' Request for Production Nos. 8, 9, and 10

Plaintiffs argue that Defendants have improperly objected to Request for Production Nos. 8, 9, and 10 by stating that the undefined term "adjuster" as used in these discovery requests is vague. (R. Doc. 40-1 at 11). These discovery requests are as follows:

> **Request for Production No. 8.** Please produce all communications and transaction data, between all Exxon-employed claim adjuster (including, but not limited to Crawford & Company) and purchaser(s) or user(s) of the gasoline from the Event.
>
> **Request for Production No. 9.** Please produce any written protocol for adjusters regarding the Event.
>
> **Request for Production No. 10.** Please produce all documents produced by the Exxon-employed claims adjusters during the Event.

Defendants explain that they objected to the term "adjuster" because it was unclear who that term referred to other than Crawford and Company. Defendants state they have fully responded to these discovery requests despite the objection to the term "adjuster." (R. Doc. 45 at 12). Plaintiffs make no argument otherwise, focusing solely on the objection to the undefined term "adjuster." Furthermore, Plaintiffs have identified documents in their supplemental production that are responsive to Request for Production No. 9. (R. Doc. 87-1 at 10). Accordingly, the Court finds that Defendants have fully responded to these discovery requests. Defendants need not provide an additional response to Request for Production No. 8, 9, and 10.

**IT IS ORDERED** that Plaintiffs' Motion to Compel is **DENIED** as to Request for Production Nos. 8, 9, and 10.

### 7. Plaintiffs' Request for Production No. 13

Plaintiff states that this document requests seeks "agreements between Exxon and its retail locations." (R. Doc. 45 at 3). Request for Production No. 13 states the following:

17

> **Request for Production No. 13.** Please produce all purchase agreements and contracts legally effective between Exxon and each location that received Exxon gasoline from the Event.

Defendants have explained that they do not own or operate any retail locations (R. Doc. 40-3 at 20). Defendants represented in their discovery response that "to the extent Exxon markets any agreements or contracts between Exxon and a retail outlet, those agreements focus entirely on the use of Exxon signage or similar promotional agreements." (R. Doc. 40-3 at 20). Defendants did not produce these signage or promotional agreements on the basis such agreements they are irrelevant. (R. Doc. 40-3 at 20). This request is limited to locations that received gasoline during the Event. To the extent that these agreements could help identify any locations that received atypical gasoline, Defendants' responses to Interrogatory Nos. 4 and 5, and Request for Production Nos. 6 and 14, will sufficiently identify such locations. Plaintiffs have made no showing that signage or promotional agreements are otherwise relevant to class certification issues. Defendants need not provide additional responses to Interrogatory No. 13.

**IT IS ORDERED** that Plaintiffs' Motion to Compel is **DENIED** as to Request for Production No. 13.

## III.  CONCLUSION

**IT IS ORDERED** that Plaintiffs' Motion to Compel is **GRANTED IN PART AND DENIED IN PART** as provided in this Order. The parties shall bear the costs of their own expenses in bringing and defending this Motion.

Signed in Baton Rouge, Louisiana, on December 8, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**