**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

ROGER JEAN LEBLANC,
Individually and on Behalf
of all others similarly situated                                    CIVIL ACTION

VS.                                                                  14-201-SDD-RLB

EXXON MOBIL CORPORATION

<u>**RULING ON MOTION FOR CLASS CERTIFICATION**</u>

Before the Court is the Plaintiffs' *Motion for Class Certification*[1] which Exxon has opposed.[2]  The parties have extensively briefed the relevant issues.  The Court took evidence and heard oral argument at the class certification hearing held on February 17 and 18, 2015.  For reasons assigned in open Court on February 18, 2015 and for the following written reasons, the Plaintiffs' *Motion for Class Certification* shall be denied.

I.      **FACTUAL BACKGROUND**

The Plaintiffs are individuals who purchased gasoline in March of 2014 that had been distributed from Exxon's Baton Rouge Terminal and produced at Exxon's Baton Rouge refinery.  Exxon concedes that, in March of 2014, Exxon distributed fuel from its Baton Rouge terminal that contained elevated unwashed gum (UWG) levels due to what appears to have been an accidental introduction of Escorez™ resin into Exxon's gasoline production process.  Plaintiffs contend that the Escorez™ resin is a washed gum (WG) which, unlike UWGs, does not combust and, thus, remains in the engine

---

[1] Rec. Doc. 19.
[2] Rec. Doc. 9.

allegedly causing engine damage and decreases in operating efficiency and performance. Although Exxon does not deny that in March of 2014 it produced and distributed gasoline with elevated resin levels, which Exxon refers to as "atypical" gasoline, Exxon contends that this "atypical" gas contained elevated levels of UWG which Exxon contends is fully combusted upon normal engine operations.

Exxon offered evidence that, upon receiving consumer complaints, Exxon shut down its Baton Rouge Terminal on March 26, 2014 and established a claims handling program to address consumer concerns and provide relief to those who sustained damages as a result of purchasing the subject gasoline. According to the evidence, Exxon has paid approximately $4.6 million in claims.

Plaintiffs move for class certification under Rule 23 of the Federal Rules of Civil Procedure and propose the following as their class definition:

> all purchasers of defective fuel created, sold, or distributed by Exxon for the twelve months preceding April 3, 2014 and all owners of property damaged by the use of defective fuel created, sold, or distributed by Exxon in that twelve month period.

## II. LAW AND ANALYSIS

### A. Elements and Standards for Class Certification

The party seeking class certification bears the burden of proving all four requirements of Rule 23(a); namely, numerosity, commonality, typicality, and adequate representation.[3] In addition to meeting the requirements of Rule 23(a), a class must also meet at least one element of Rule 23(b). Plaintiffs move for certification under Rule 23(b)(3).

---

[3] *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only'."[4] Because class actions are the exception and not the rule, "[a] district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class."[5] "Rule 23 requires the Court 'to find,' not merely assume the facts favoring class certification."

Exxon attacks Plaintiffs' certification motion on each ground necessary for class certification.[6] The Court finds that the requirements of numerosity and adequacy of representation are present. However, the Court finds that Plaintiffs' claims fail the predominance and superiority requirements of Rule 23(b)(3) and that the class is not ascertainable. Because the Plaintiffs' Motion to Certify fails on these grounds, the Court need not address the additional 23(a) requirements of commonality and typicality.

**B. Rule 23(b)(3) Predominance and Superiority**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[7] The class definition proposed in this case draws its parameters around consumers and/or purchasers of the subject gasoline, which Plaintiffs call "defective" and Exxon calls "atypical". The clever use of adjectives, however, does not drive the Court's analysis. Rather, the Court must "identify the substantive law issues which will control the outcome of the litigation"[8] in order to determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members".[9] While the common

---

[4] *Wal-mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011)(quoting *Califano v. Yamasaki*, 99 S.Ct. 2545, 2557 (1979)).
[5] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).
[6] Rec. Doc. 9.
[7] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2249, 138 L. Ed. 2d 689 (1997)
[8] *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 316 (5th Cir. 1978).
[9] FRCP Rule 23(b)(3)

experience of purchasing and/or using the subject gas may satisfy Rules 23(a)'s requirement of commonality, the predominance inquiry is "far more demanding".[10] Thus, "[t]he issue of 'predominance' has become the battlefield on which most class certifications are fought, and the outcome depends heavily on [the] court's assessment of what evidence (i.e., whether class-wide or individualized) will be adduced at the trial."[11]

Before certifying a class under Rule 23(b)(3), the court must determine that "the questions of law or fact common to class members predominate over any questions affecting only individual members."[12] The predominance inquiry requires the Court to consider "how a trial on the merits would be conducted if a class were certified."[13] This "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." [14]

### 1. Redhibition

Initially it must be noted that, as a matter of law, only purchasers of the subject gasoline are within the class of persons that can bring claims in redhibition. A cause of action in redhibition "relates to error in the cause of completed sales, and, absent a

---

[10] *Amchem Products,* 521 U.S. at 624, 117 S.Ct. at 2250.
[11] *Ancar v. Murphy Oil, U.S.A., Inc.,* No. Civ. No. 06-3246, 2008 WL 2951794, at p. 4 (E.D. La. July 25, 2008).
[12] *Frey v. First Nat. Bank Sw.,* No. 13-10375, 2015 WL 728066, at p.5 (5th Cir. Feb. 20, 2015) (internal citations omitted).
[13] *Gene and Gene LLC v. BioPay LLC,* 541 F.3d 318, 326 (5th Cir.2008) (quoting Bell Atl. Corp. v. AT&T Corp., 339 F.3d 294, 302 (5th Cir. 2003)).
[14] *Id.*

sale, the redhibition articles do not apply."[15] The Plaintiffs' proposed class definition includes both purchasers of the subject gasoline and "owners of property damaged by" the subject gas. Not all owners were necessarily purchasers. Accordingly, not every claimant meeting the class definition has a claim in redhibition and this question of fact is unique among proposed class members. Although the distinction between class members who were non-purchase users as opposed to purchaser/users is subject to rather simple evidentiary proof, it is nonetheless a question of fact which is not common among proposed class members.

"Under La. C.C. art. 2520, the seller [and manufacturer] warrants the product he sells to be free of redhibitory defects."[16] Louisiana Civil Code art. 2520 defines a defect as redhibitory "*when* it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect," or "*when*, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price."[17]

Even though gasoline distributed from Exxon's Baton Rouge Terminal in March of 2014 admittedly contained elevated resin levels, the gasoline is not redhibitory *per se.* Rather, for the subject gasoline to be redhibitory or defective, under Louisiana law, requires proof that the gasoline purchased was either "absolutely useless" or "its use is so inconvenient" that it is presumed the buyer would not have purchased the gas for the price paid. Thus, to determine whether a particular purchaser of the subject gasoline

---

[15] *Alvis v. CIT Grp./Equip. Fin., Inc.,* 918 So. 2d 1177, 1183 (La. App. 3rd Cir. 2005), *citing, Stack v. Irwin,* 246 La. 777, 167 So.2d 363 (1964).
[16] *Aucoin v. S. Quality Homes, LLC,* 984 So. 2d 685, 693 (2008).
[17] *Id.* at 690.

has a redhibition claim requires inquiry into the nature and degree of uselessness or inconvenience, if any, the purchaser or user experienced. This factual issue is the seminal question of a redhibition claim and requires specific and individualized proof of facts. It is not an inquiry which is amenable to uniform or formulaic class wide proof.

Plaintiffs argue that "[e]very purchaser of a defective drop of Exxon fuel is entitled to a refund of [the] purchase price, as a matter of Louisiana redhibition law."[18] This is not an accurate statement of law. Simply characterizing the subject gas as "defective" does not trigger rescission. Rather, under Louisiana law only redhibitory defects are actionable. Civil Code article 2520 unambiguously provides that the "seller warrants the buyer against *redhibitory* defects, or vices, in the thing sold." Not every imperfection or arguable "defect" is redhibitory. Civil Code article 2520 defines defects that are redhibitory in terms of the object's usefulness for its intended purpose.

The matter of proving the identity of persons who purchased the subject gasoline will be presumably simple and entail similar evidence across class members. However, predominance ends there. As stated, proof of purchase of the subject gasoline alone is not dispositive of liability in redhibition. Rather, it will be incumbent on the Court to hear individualized evidence of uselessness or inconvenience in order to determine whether what the Plaintiffs characterize as "defective" was redhibitory.

Individualized proof will also be required to determine the legally permissible remedy, whether rescission or reduction in price. Relying on Civil Code article 2545[19],

---

[18] Rec. 19-1, p. 13.

[19] A manufacturer is conclusively presumed to have knowledge of defects in the object it manufactures. *Young v. Ford Motor Co.,* 595 So.2d 1123, 1126 (La.1992). Thus, because of this presumption of knowledge, the manufacturer "is deemed to be in bad faith in selling a defective product" and is liable to the buyer for restitution of the purchase price and all damages recoverable under Art. 2545. *Cox v. Lanier Business Prods., Inc.,* 423 So.2d 690, 693 (La.App. 1 Cir.1982), *writ denied,* 429 So.2d 129 (La.1983). *Cf.* Civil Code Art. 2541.

Plaintiffs argue that rescission will exclusively and uniformly apply to the entire putative class. However, Civil Code article 2541 provides that:

> In an action for rescission because of a redhibitory defect the court may limit the remedy of the buyer to a reduction of the price.

A plain reading of Article 2541 suggests that, notwithstanding Exxon's liability for rescission because of its status as a manufacturer, a remedy in *quanti minoris* is not excluded.[20] To the extent that rescission does not constitute the exclusive remedy, individualized evidence of the degree of inconvenience would be required in order to assess an appropriate quantum reduction in price. Finally, as the manufacturer of the subject gasoline, Exxon has liability in redhibition for "reimbursement of the reasonable expenses occasioned by the sale and those incurred in the preservation of the thing, and also for damages and reasonable attorney fees."[21] Again, individualized proof will be required to determine the extent of damages, if any, recoverable by individual class members.

Accordingly, the Court finds that individual issues predominate over issues common to the class, thereby rendering class certification inappropriate.

2. <u>Unjust Enrichment</u>

Although the Plaintiffs have asserted claims against Exxon for unjust enrichment, they have not addressed how they will satisfy their burden of showing they can satisfy the requirements for a class certification on this claim. Plaintiffs simply argue that Exxon was unjustly enriched by its allegedly knowing decision to sell defective and contaminated gasoline at full market value. Plaintiffs cite a state law case as authority

---

[20] The Court is unaware of any state jurisprudence which interprets the express provisions of Civil Code article 2541 to manufacturer sellers.
[21] La. Civ. Code Art. 2545.

for the proposition that "class action is appropriately used to 'disgorge unjust enrichment'"[22]. The Court is unpersuaded. The following elements must be satisfied for a claim of unjust enrichment: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of 'justification' or 'cause' for the enrichment and impoverishment; and (5) no other remedy at law [is] available to plaintiff."[23] "Unjust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided."[24] Therefore, the Court will have to make a legal determination of which class members have no other viable claim under the law. For those individuals able to assert a claim of unjust enrichment, individualized proof of the nature, extent, and degree of impoverishment or damage is related to the alleged enrichment. Accordingly, the Court finds that these individualized inquiries will predominate over the class issues. Therefore, class certification is inappropriate.

### C. Ability to Ascertain Class

"It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."[25] Where the determination of class membership "is entangled with the underlying merits of the claim" class certification is inappropriate.[26] As stated above, the fact that the subject gasoline was off-spec does not make it *ipso facto* "defective" for purposes of redhibition. Only gasoline which was demonstrably useless or its use "so inconvenient" that it is presumed the buyer would not have purchased it, is actionably defective under

---

[22] Rec. Doc. 111, p 129, citing, *McCastle v Robbins*, 456 So. 2d 612 (1984).
[23] *Williams v. Chesapeake Louisiana, Inc.*, 2013 WL 951251, at *6 (W.D.La. Mar. 11, 2013)(quoting *Dugas v. Thompson*, 71 So.3d 1059, 1067-68 (La.Ct. App. 2011).
[24] *Mouton v. State*, 525 So.2d 1136, 1142 (La.Ct.App. 1988).
[25] *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970).
[26] *In re Vioxx Products Liab. Litig.*, 2012 WL 2061883, at p. 5 (E.D. La. 2012).

Louisiana law. The task of ascertaining class members, ie. "all purchasers of defective fuel", is not simply a matter of identifying purchasers of Exxon gas during a determined time period. Rather, only persons who experienced uselessness or a degree of inconvenience that gives rise to a presumption that he/she would not have purchased the gasoline, meet the definition of a "purchaser of defective fuel". Thus, inquiry into the merits of each potential class member's claim would be necessary to determine whether an individual falls within the defined class. "The need to conduct such individual inquiries to determine who qualifies as a member of the class undermines the administrative benefits of Rule 23."[27]

## III.   CONCLUSION

For the foregoing reasons, the *Motion for Class Certification*[28] is DENIED.

Signed in Baton Rouge, Louisiana, on <u>March 17, 2015</u>.


_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[27] *Id.*
[28] Rec. Doc. 19.